IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

APPEAL NO. 22-14126

_____

UNITED STATES OF AMERICA

Appellee,

v.

SYLVANIS BRICE

Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

_____

INITIAL BRIEF OF APPELLANT

_____

Keith W. Upson
Florida Bar No. 130079
The Upson Law Group, P.L.
2335 Stanford Court, Suite 503
Naples, Florida 34112
239-330-7551 Voice
239-330-7548 Facsimile
keith@upsonlawgroup.com
Counsel for Appellant Sylvanis Brice

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

No publicly traded company or corporation has an interest in the outcome of this appeal. The persons and entities listed below have an interest in the outcome of this case:

1.    Badalamenti, John. L., United States District Court Judge.

2.    Barber, Thomas P., United States District Court Judge.

3.    Brice, Sylvanis, Appellant.

4.    Chappell, Sheri Polster, United States District Court Judge.

5.    Corrigan, Timothy J., United States District Court Judge.

6.    Eth, Simon R., Assistant United States Attorney.

7.    Holder, Johan, Co-defendant.

8.    Hoppmann, Karin, Acting United States Attorney.

9.    James, Kaleb, Co-defendant.

10.   McCoy, Mac R., United States Magistrate Judge.

11.   Mirando, Carol, United States Magistrate Judge.

12.   Mizell, Nicholas P., United States Magistrate Judge.

13.   Sansone, Amanda Arnold, United States Magistrate Judge.

14.   Sinacore, Michael Carl, Assistant United States Attorney.

15. Rhodes, David, Assistant United States Attorney, Chief, Appellate Division.

16. Rosenthal, Russell K., former trial counsel for Appellant Sylvanis Brice.

17. Shatz, Susan, former trial counsel for Appellant Sylvanis Brice.

18. Summers, Jr., George Ellis, former trial counsel for Appellant Sylvanis Brice.

19. Upson, Keith W., appellate counsel for Appellant Sylvanis Brice.

20. Waggerby, Uriah, Co-defendant.

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Brice requests oral argument and respectfully submits that oral argument could be beneficial to assist the Court in rendering its decision.

# TABLE OF CONTENTS

Page

Certificate of Interested Persons ............................................................... **C1**

Statement Regarding Oral Argument ....................................................... **i**

Table of Contents ................................................................................... **ii**

Table of Citations ................................................................................... **iii**

Statement of Subject Matter and Appellate Jurisdiction ..................... **iv**

Statement of the Issues ........................................................................... **1**

Statement of the Case

      a.  Course of the Proceedings and Disposition in the Court Below ...... **2**

      b.  Pertinent Facts of Trial ............................................................ **17**

Standards of Review ................................................................................ **25**

Summary of the Argument ...................................................................... **26**

Argument

    I.     Mr. Brice's July 2022 trial occurred beyond the 70 days
           mandated by 18 U.S. Code § 3161. .................................... **27**

    II.    The court abused its discretion by admitting Mr. Brice's
           prior convictions pursuant to Rule 609 where the court
           conducted no analysis as to whether the probative value
           outweighed the prejudicial effect and failed to explicitly
           identify the factors the court considered and weighed. ............ **39**

Conclusion ............................................................................................... **47**

Certificate of Compliance ....................................................................... **48**

Certificate of Service ............................................................................... **n**

# TABLE OF CITATIONS

**Cases**                                                    **Pages**

*Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981)  ............. 47

\*United States v. Ammar*, 842 F.3d 1203 (11th Cir. 2016) ................. *passim*

*United States v. Bailey*, 762 Fed. Appx. 698 (11th Cir. 2019) .. 25, 27, 39, 45

*United States v. Preston*, 608 F.2d 626 (5th Cir. 1979)  ................. 27, 45, 46

*United States v. Toll*, 804 F.3d 1344 (11th Cir. 2015)  ......................... 26, 39

*United States v. Williams*, 314 F.3d 552 (11th Cir. 2002)  ................... 25, 27

Statutes and Rules

18 U.S.C. § 841 .................................................................... 2

18 U.S.C. § 846 .................................................................... 2

18 U.S.C. § 1951 .................................................................. 2

18 U.S.C. § 3161 ........................................................... *passim*

18 U.S.C. § 3231 ................................................................ iv

18 U.S.C. § 3742 ................................................................ iv

28 U.S.C. § 1291 ............................................................... iv

28 U.S.C. § 1294 ............................................................... iv

Federal Rule of Evidence 609 ...................................... *passim*

Federal Rule of Evidence 806 ...................................... *passim*

## STATEMENT OF SUBJECT-MATTER
## AND APPELLATE JURISDICTION

This is the direct appeal from a final criminal judgment in the United States District Court for the Middle District of Florida, Fort Myers Division, entered on December 12, 2022. (Doc. 377). The district court had jurisdiction over this criminal matter pursuant to 18 U.S.C. § 3231. Mr. Brice timely filed his Notice of Appeal on December 12, 2022. (Doc. 382). This Court has jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. §§ 1291 and 1294.

# STATEMENT OF THE ISSUES

Whether 1,204 days of the 1,274 between Mr. Brice's indictment and trial were properly excludable time pursuant to 18 U.S. Code § 3161 so that no violation of the Speedy Trial Act Occurred; and

Whether the trial court abused its discretion by admitting Mr. Brice's prior convictions pursuant to Rule 609 without finding the probative value outweighed the prejudicial effect and without explicitly identifying the factors the court weighed.

# STATEMENT OF THE CASE

### a.  Course of the Proceedings and Disposition in the Court Below

On January 15, 2019, Sylvanis Brice and Uriah Waggerby were indicted of conspiring to commit robbery contrary to 18 U.S.C. § 1951(a), committing or attempting robbery contrary to contrary to 18 U.S.C. §§ 1951(a)-(b) and 2, and conspiring to possess with intent to distribute marijuana contrary to contrary to 18 U.S.C. §§ 846 and 841(b)(1)(D).  (Doc. 3).

The first superseding indictment added that Reuben ("Sonny") Billie was selling drugs from his home on the Big Cypress Reservation, and alleged the manner and means and acts in furtherance of the conspiracies alleged against both defendants.  (Doc. 76 at 1, 2).

Mr. Brice was alleged to have conspired to take property from Reuben ("Sonny") Billie at Mr. Billie's home including marijuana, marijuana wax, and United States currency.  (Doc. 76 at 1).

In furtherance, on November 1, 2016, Mr. Brice was alleged to have confronted Mr. Billie at his home and attempted to take those items by means of actual and threatened force, violence, and fear of injury, before fleeing. (Doc. 76 at 3, 4).

Ronny Billie, Jr. died from a gunshot sustained during the commission of the attempted robbery. (Doc. 423 at 133).

Mr. Brice's counsel moved for a competency evaluation and hearing in July of 2019, and three days later moved to withdraw. (Doc. 104). (Doc. 108). The motion to withdraw was granted; the competency motion was denied without prejudice pending renewal by new counsel. (Doc. 109).

Mr. Brice's new counsel requested and received an expert to evaluate Mr. Brice, and by joint motion the parties sought a determination of Mr. Brice's competency. (Doc. 115). (Doc. 127). The expert appointed pursuant to counsel's motion and the resulting order, Dr. Valerie McClain, opined that Mr. Brice was not competent to be tried, and the United States sought and received further evaluation pursuant to 18 U.S.C. § 4241. (Doc. 127 at 1-2).

Mr. Brice's competency hearing was held April 9, 2021, and by written order dated April 30, 2021, the court found Mr. Brice competent to proceed. (Doc. 208). (Doc. 403).

On May 7, 2021, Mr. Brice filed a notice of alibi that provided, *inter alia*, "On November 1, 2016, defendant Sylvanis Brice was in Clewiston, Fl. He was in the company of his girlfriend, Griselle Sepulveda. Specifically, Ms. Sepulveda will testify that she was with Mr. Brice on the evening of

November 1, 2016, and that they spent the night together at the residence of Wanda Melton." (Doc. 210).

Counsel for Mr. Brice last moved for a continuance on May 14, 2021. (Doc. 212).

A second superseding indictment was filed October 20, 2021, 1,009 days after the initial indictment, which added two defendants, Johan Holder and Kaleb James. (Doc. 232).

The second superseding indictment did not change the allegations against Mr. Brice, a fact acknowledged by the Government. ["The only difference between the first superseding indictment and the second superseding indictment, as to Mr. Brice, is the addition of two previously unindicted coconspirators as to every count of the indictment." (Doc. 414 at 4).]

At the October 21, 2021, status conference, counsel for Mr. Brice first brought the Speedy Trial Act to the court's attention by demanding that Mr. Brice "be tried now," and was directed by the court to file something in writing. (Doc. 413 at 7, 8).

"My position on behalf of Mr. Brice is that we're going to demand trial now." (Doc. 413 at 7). The court responded, "I guess we could. I guess we

could do a one-person trial at the end of November. We could." (Doc. 413 at 7). Counsel for Mr. Brice replied, "That's fine with me." (Doc. 413 at 8).

Counsel for the United State noted, "To the extent this is a motion to sever, Your Honor, I think that it should be denied." (Doc. 413 at 8). Counsel for Mr. Brice responded, "It is not a motion to sever, it's a demand for trial, under the statute."

| | |
|---|---|
| Government: | I haven't seen a demand for trial. I'm not sure what she's referring to. |
| Court: | Let's do it this way. It's federal court, so we've got to have everything in writing. So file whatever it is you think you want to do, file it in writing, and the prosecution will do a written response, and I'll take a look at it, I'll see where we are, and in the meantime we'll do a status …" |

(Doc. 413 at 8).

"In the meantime, for the reasons we've talked about in this hearing, I would make the ends of justice finding that the continuance outweighs the best interests of the public and the defendant in a speedy trial, at least from what I've heard so far. And then I'll look at whatever you have to file [counsel for Mr. Brice]. Okay?" (Doc. 413 at 9-10).

Pursuant to the court's order to file something in writing, on November 4, 2021, counsel for Mr. Brice filed a Memorandum Regarding Brice's Demand for Speedy Trial. (Doc. 261). The United States filed a response on November 16, 2021. (Doc. 263.).

By docket entry dated November 19, 2021, the court ruled

**ENDORSED ORDER: The Court has reviewed Defendant Sylvanis Brice's memorandum regarding his demand for speedy trial (Doc. 261) and the Government's response (Doc. 263). Although a November trial date was discussed at one time, this case is currently and remains set for the January 2022 trial term. The Court has previously held that the time until the end of the January 2022 trial term is "excludable time" pursuant to 18 U.S.C. § 3161(h). (Doc. 241). The status conference set for December 16, 2021, will remain as scheduled, and potential trial dates may be discussed at the status conference. Signed by Judge Thomas P. Barber on 11/19/2021. (ANL)** (Entered: 11/19/2021)

(Doc. 268).

The docket entry referred to by the court as holding "the time until the end of the January 2022 trial term is 'excludable time' pursuant to U.S.C. § 3161(h)" is the court's October 21, 2021 oral ruling at the status conference of that date:

**ORAL ORDER as to Uriah Waggerby and Sylvanis Brice. The Court finds that the ends of justice served by granting such a continuance outweigh the best interest of the public and the defendant in a speedy trial. The Court, therefore, determines that the time from today until the end of the January 2022 trial term shall be "excludable time" pursuant to 18 U.S.C. § 3161(h). Jury Trial is set for the trial term commencing January 3, 2022. A Status Conference is scheduled for December 16, 2021 at 10:30 am and will be conducted via Zoom video conference. A separate Zoom invitation will be emailed to the parties closer to the hearing date. Signed by Judge Thomas P. Barber on 10/21/2021. (JGG)** (Entered: 10/21/2021)

(Doc. 241.) (Doc. 413 at 9-10).

The parties were next in court November 2, 2021, for the arraignment on the second superseding indictment. (Doc. 414). Counsel for Mr. Brice notified the magistrate judge that Mr. Brice had, on October 21, 2021, demanded a speedy trial. (Doc. 414 at 6).

Status conferences were subsequently held December 16, 2021 (Doc. 415), January 25, 2022 (Doc. 415), February 3, 2022 (Doc. 417), April 18, 2022 (Doc. 418), and April 19, 2022. (Doc. 419). Pretrial took place June 24, 2022. (Doc. 420).

At the December 16, 2021 status conference, it was the court that first brought up the Speedy Trial Act:

Court:
All right. So this is one where [counsel for Mr. Brice] wanted to do a speedy trial thing on this. I looked at that a little bit. I didn't do anything with it other than say we'd talk about the case today to get something scheduled.

So why you don't brief me on this, [Government], what your thoughts are and when we need to get this thing scheduled, in light of the speedy trial activities that have been noted.

Government:
Your Honor, without getting into the speedy trial issue in detail that, you know, we responded to in writing, just putting that aside for the moment, as far as a practical time to try this case, I'm suggesting March, that we put on it March trial calendar.

I haven't spoken with [counsel for Mr. Brice]. I'm assuming her position is she wants to go as quickly as possible, but obviously she can speak to herself on that.

Doc. 415 at 4.

Counsel for Mr. Brice said, "My position remains the same. As soon as possible." (Doc. 415 at 6).

In setting the trial for February 28, 2022, the court ended the proceeding with, "And, pursuant to 18 USC Section 3161(h)(7) I find the ends of justice are served by continuing this case for the reasons that we have been just discussing, and that outweighs the best interests of the public and the defendant in a speedy trial. And I say that time is excludable over [counsel for Mr. Brice's] position. All right? Thank you." (Doc. 415 at 7-8). No written order was entered.

At the January 25, 2022 status conference, counsel for Mr. Brice proposed that co-defendant Waggerby be severed due to his counsel's medical issues. (Doc. 416 at 4).

Like the court had done at the December 16, 2021 status conference, the court again turned to the Government for guidance.

"What do you . . . in light of this situation, [Government], what do you suggest, recommend . . . . You know, I don't have any predetermined idea of what the right thing to do here is. Usually I do, and I let the lawyers talk, and then kind of say, well, here's what we're going to do. I don't really know what the right thing to do is in light of all of this. What are your thoughts?" (Doc. 416 at 7).

General discussion ensued, and later in the proceeding the Government asserted that "Speedy trial and everything else goes with the most recent defendant, of course." (Doc. 416 at 14). Counsel for Mr. Brice responded, "… my 70 days is running. So I'm am still in a position where I am demanding." (Doc. 416 at 14).

The Government responded, *inter alia*, "As far as the speedy trial demand, Your Honor, I think we have addressed that. I know I addressed that in my previous response to the pleading filed on behalf of Mr. Brice; and, Your Honor, you have made ends of justice every step of the way, and we are still on zero on our speedy trial clock. There is no issue on the speedy trial rule here, and I don't envision one. I certainly think, if you continue the case again, I believe the ends of justice would dictate and endorse that. It's not a speedy trial like in state court. It doesn't exist here." (Doc. 416 at 16-17).

Court:          So you think I could continue the case -- when does he have the ability to start the 70-day clock ticking?

Government:     He does not have that ability. It is not in his hands, unlike in state court. It's simply a calculation of the number of days elapsed, of non-excludable days; and as long as Your Honor is making ends of justice findings, as you have been, then the speedy trial clock is not running.

So, not to rehash the whole history of the case, but there's been a variety of different reasons for this case to be continued over the years, a large chunk of which was attributable to Mr. Brice's situation, and his need to be evaluated and found competent. And then, of course, many scheduling issues having a hearing with that. And COVID complicated this for all of us, and how we had to get that done.

But what matters is Your Honor has made findings, at every single stage, that it was in the interests of justice, so we're not in any kind of a speedy trial danger here, Your Honor. So I think it's entirely your discretion about how to handle this.

(Doc. 416 at 17-18).

The January 25, 2022 conference concluded with no findings or rulings regarding scheduling.

At the February 3, 2022 status conference, the court initiated the discussion about pushing the February 28, 2022 trial out to May, 2022. (Doc. 417 at 6).

Counsel for Mr. Brice argued, "The problem with all the delays is the date this alleged robbery occurred was November 1st, 2016. Memories fade, witnesses disappear. I'm having a hard time keeping track of people. I'm having people move, people change their phone numbers, it's . . . . I mean, that's really a -- one of the biggest problems with the delay." (Doc. 417 at 9).

COURT:          I get it. I understand. This case was supposed to go to trial within 75 days. If I attempted to force this case to trial within 75 days, you would have been screaming you couldn't be ready, how many experts you had to get involved in this, et cetera, et cetera. So I understand it goes both ways. But we need to get another date out there to shoot for here. What's wrong with May, with the new guys not going to be in the case yet, or whats . . . what are your thoughts?

(Doc. 417 at 9).

The court set the trial for the first two weeks in June, 2022. (Doc. 417 at 13). "For the record, Your Honor, I object to any continuances in this matter. Brice demands a trial." (Doc. 417 at 13).

COURT:          All right.

Anybody else want to say anything? All right.

So, pursuant to 18 USC Section 3161(h)(7), I find the ends of justice are served by the continuance for the reasons we've just discussed. I'll put that in a written order just so everyone is clear on that. And the . . . basically, for the things we talk about here, that certainly outweighs the best interests of the public and the defendant in a speedy trial. And the time is going to be excludable to the end of the June trial term.

(Doc. 417 at 13-14).

This time – for the first time – the court did enter a written order that contained the court's specific reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial. (Doc. 277).

At the April 18, 2022 status conference, the speedy trial discussion continued:

Counsel for Holder: I just received initial discovery last Thursday. I'm informed by other counsel it's very substantial. I need to review it, and my client is going to want to review it also.

Court:               Yeah, well, you may or may not know, this case has been

pending for the better part of what, almost three years

now?  There's a lot to it.  We have been expecting you to

become involved, and I think I may have even said before,

whoever the new attorney is, make sure it's somebody

who's going to be ready to go on relatively short notice

under the federal system if we have to.

You know, the federal, what is it, 75 days?  Isn't that the

presumptive way cases are supposed to go?  They don't

usually go that way, but am I right about that?   The

number?

Government:         Seventy days under the Speedy Trial Act, Your Honor.

The Government initiated a discussion of pushing the trial to "middle
to late" July, 2022:

But my thoughts, Your Honor, we have [counsel for Mr. Holder], who

is  new  to  the  case.    The  discovery  is  voluminous.    We  have

[Government's co-counsel], who has been in this case for three years,

and the government considers to be an important part of the prosecution

team.  He's [on paternity leave] until July 11th.

Our position, Your Honor, we believe the reasonable scheduling of this trial that allows ample time for [counsel for Mr. Holder] to be ready, and to avoid any issues for trying to push this case to go on June 1st, and also allows the government to have its trial team remain intact for the trial, is to schedule this for sometime middle to late July, Your Honor.

(Doc. 418 at 5-6).

No decisions were made, and a subsequent status was set the following day. (Doc. 418 at 11).

At the commencement of that proceeding, April 19. 2022, the court declared, "I have decided to move the case to the week of July the 11th, to start on Monday, July the 11th." (Doc. 419 at 5).

Counsel for Mr. Brice objected. "Not to be a broken record, but, for the record, on behalf of Mr. Brice, I would like to object to the continuance." (Doc. 419 at 5).

The court concluded the proceeding by pronouncing, "I'll do a written order, the speedy trial thing, and continuing the case to that date, that has the ends of justice findings, which I'll make in writing. But I'll also make it on the record right now, and say pursuant to 18 USC Section 3161(h)(7) I find that the ends of justice are served by continuing the case to the date I

mentioned, and outweighs the best interests of the public and the defendant in a speedy trial. That time is excludable, as we have added a new defendant, and it's a serious case, with serious charges, the prosecutor needs time and the defense needs to time to prepare, and I don't want to split the case up in the interests of judicial economy. So we're taking everyone to that date. Anything else?" (Doc. 419 at 7-8).

The court rendered a written order on May 4, 2022, only the second appearing in the docket containing the court's reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial. (Doc. 302).

Mr. Brice was tried by jury with his three codefendants from July 11, 2022, through July 20, 2022. (Doc. 421-28).

The jury found Mr. Brice guilty on counts 1 (conspiracy to commit robbery) and 2 (attempted robbery) and not guilty on count three. (Doc. 352.). (Doc. 428 at 123-24).

Counsel for Mr. Brice filed post-verdict motions for new trial and for judgment of acquittal. (Doc. 354). (Doc. 355). Both were denied. (Doc. 362).

The court sentenced Mr. Brice to 48 months imprisonment (240 months one count one and 240 months on count two, consecutive) followed by three years of supervised release. (Doc. 429 at 57). (Doc. 377).

This appeal followed. (Doc. 382). Mr. Brice is currently incarcerated.

**b.     Pertinent Facts of Trial**

The Government presented evidence sufficient to sustain Mr. Waggerby's conviction on count one, conspiracy to commit robbery.

Specifically, through a series of sworn post-*Miranda* recorded interviews, Mr. Waggerby told Seminole Police Department Detective Jarret Romanello that he had told third parties the person to rob, the items to take, and the place to commit the robbery. (Telling others, Doc. 424 at 19; 26-27; 30). (Person to rob, Doc. 424 at 26; 31). (Items to rob, Doc. 424 at 24). (Place where the person and items would be located, Doc. 424 at 24-25; 35-36).

In his sworn statements to law enforcement, however, Mr. Waggerby did not implicate any of his three co-defendants: he never told law enforcement that Mr. Brice was involved. (Doc. 422 at 194). (Doc. 424 at 147; 152).

The Government presented evidence (via witness testimony, home security video, and law enforcement body camera video) sufficient to establish that on November 1, 2016, a robbery had been attempted.

Sonia Billie, Ruben ("Sonny") Billie's wife, testified that on the night of November 1, 2016, an armed masked man made his way into her home shortly before she heard a gunshot from outside the home. (Doc. 423 at 15-16). She testified that she and her husband had home security cameras and she gave access to those cameras to law enforcement. (Doc. 423 at 25).

The home security camera videos were admitted and published to the jury. (Doc. 423 at 199-202; 209-215).

Ronnie Billy was found outside the home, unresponsive. (Doc. 422 at 223). The cause of death was determined to be a single gunshot wound. (Doc. 423 at 133).

Seminole Police Officer Joshua Williams' body camera video was admitted and published, (Doc. 422 at 226-232), as was Seminole Police Sargent Barry Dodge's. (Doc. 422 at 246-251).

Marijuana and United States currency were recovered from the scene. (Doc. 423 at 44; 119; 189-90; 141-42).

The Government's evidence implicating Mr. Brice came primarily from Mr. Brice's own statements surreptitiously recorded by a confidential informant.

David Beall, Assistant Chief of Seminole Police, testified that he provided an informant, Demaster Auther, with a recording device for the purpose of recording Mr. Brice. (Doc. 424 at 264-65).

The recording device was " … a small key fob. The size of a key fob that a person carries. About this big. It had a button on the side. He [Mr. Auther] could turn it on and off. It was not a device that he could open up or manipulate. We gave him a power source for it, which is plugged in the wall and plugged into the side of it. We told him to keep it charged until he was ready to use it. We, again, showed him how to use it and gave it to him and instructed how we would like for him to record a conversation." (Doc. 424 at 265).

Assistant Chief Beall testified that he retrieved the recording device after Mr. Auther had spoken with Mr. Brice. (Doc. 425 at 8).

"The source evidently had the recorder in his hand and would turn it off and on during the conversation. And that broke up the conversation to seven different times. Seven different pieces of the conversation were recorded. So when the secretary did the first transcripts, she would listen to it. She could hear a break in that conversation, and then it started back up at a later time. That equated to seven different sessions." (Doc. 425 at 11).

Of those, the witness testified sessions two, three, and four were relevant to the charges against Mr. Brice. (Doc. 425 at 11).

The audio and transcripts from sessions two, three, and four were admitted and published. (Doc. 425 at 13).

The session two audio played in open court was "mostly unintelligible" to the live courtroom reporter, as was session three. (Doc. 425 at 16-17). Session four was "largely unintelligible." (Doc. 425 at 18).

In closing, the Government argued without objection that "Mr. Brice gave a detailed account of what happened. In the middle of the recorded conversation, I believe it would be Session 3 if you wanted to listen to that again, that's where he gives the play-by-play, blow-by-blow account of what happened. Mr. Brice says that they ran up there, that he hit a guy, that he chased the owner to the door. He says he tripped him; he held a gun. The wife came to his aid. He describes all of that. And then he says that he shot the guy. That's what Mr. Brice says, and then he says he was on the phone." (Doc. 428 at 17).

"The next detail, he described how he drove from the reservation and how he went 30 miles an hour. He describes driving on the path that you now know, maybe painfully because you saw map, after map, after map, and now you have a feel for the area. You know that he drove down Snake Road to

20

Alligator Alley and then drove east towards Dade and Broward, and then headed up Highway 27. Mr. Brice said that. He didn't give those names specifically, but he talked about the direction they went, and he talked about driving to South Bay, and he talked about shooting up to Sebring. And he also talked about Big Chris. All of those things come from his mouth, and you know from the phone, which I'll get to later, that's exactly what happened." (Doc. 428 at 20-21).

"What happened along the way, as he's driving, he's not panicking. First rule, don't panic. Again, Mr. Brice is the hero of his own story. He's describing how calm, cool, and collected he is. He's going 30 miles an hour, get out there past the rodeo. "I avoid that license plate reader." That's what Mr. Brice said. He described how he went sideways and then straightened out, accelerating. He's making some noise about it." (Doc. 428 at 21).

Additionally, the Government presented forensic cell tracking evidence apparently consistent with Mr. Brice's recorded representations regarding the route he took following the incident. (Doc. 426 at 206-211).

During Mr. Brice's cross examination of Detective Jarret Romanello, counsel asked questions regarding Mr. Brice's statements to the Detective, specifically that Mr. Brice had said he was with his girlfriend and children at the time of the incident at issue. (Doc. 424 at 196-197).

The Government noted that defense counsel had just " … elicited self-serving hearsay statements against Mr. Brice, and we intend to introduce evidence of his prior convictions as the declarant."  (Doc. 424 at 198-199).

Discussions between counsel for Mr. Brice and the Government ensued regarding the possibility of a stipulation, and ultimately counsel elected not to participate to preserve a Rule 609 objection.  (Doc. 426 at 274).

Court:            All right.  We will-come to that now.  So now we're doing the next step, where the Judge has to do the balancing under the rule.  So now, because it is new information that was not previously covered, specifically going to an alibi, now we're under Rule 609, where have I to decide what I'm going to allow.

So it's fair game under Rule 806.  Now, what are we going to allow under Rule 609?

Counsel:          Just to make my record, Your Honor, I just want to make my 609 objection on the record.

Court:            Yeah.  Go ahead.

Counsel:          There's a balancing test that you -- the Court has to determine an on-the-record finding that the value of admitting the evidence outweighs its prejudicial effect.  So

22

I'm saying that anything that the Court admits pertaining to any priors of my client, of course, it's going to be he did something bad before, he's a bad person, he should be found guilty.

Government:    Judge, that's not a balancing test. And Your Honor, I just want to make a point. I'm not even asking -- this is a subset of Mr. Brice's felony convictions. He has an extra conviction that is right on the border of the ten years that I didn't ask about.

(Doc. 426 at 252-53).

The court reviewed where in the process the parties were:

"So Romanello was questioned. He probably testified longer than any other witness in this case about a lot of stuff. I guess most of it had to do with his visits with Mr. Waggerby. But at some point, he had some information that he was asked about on direct by the prosecutors about Mr. Brice. And then, on cross-examination, Mr. Brice's attorney elicited information specifically that, apparently, Mr. Brice had told the cops that he was at his auntie's house with his girlfriend, Gigi, in Clewiston on the date of the attempted robbery of Reuben Billie's house and that he had nothing to do with it. And that's from the transcript." (Doc. 426 at 253).

"And that's, basically, an alibi, which I think we're – that's what we're going to hear about tomorrow. I'm hearing that we are going to have a girlfriend or somebody that's gonna say that, look, 'Mr. Brice, wrong guy. He was with me in Clewiston on the day in question,' or what have you. And so Mr. Brice has been, essentially, allowed to testify to the jury in support of his own alibi through that cross-examination questioning." (Doc. 426 at 254).

"To me, this is classic -- now we're in classic Rule 806 territory, and so, pursuant to that rule, the prosecution at least has the opportunity to admit prior convictions, but they would have me testify. That's how that the rule works. And so now we're doing the 609 balancing act here – it's not an act. It's an exercise. But let me see what it is. What do you have in terms -- are these certified copies like we would do in state court?" (Doc. 426 at 254).

The Government responded, "These are all certified convictions. And, again, if we can reach some sort of agreement, I don't need to move these in, in front of the jury, because they contain a lot of information that [counsel for Mr. Brice] probably doesn't' want in there about sentences and other matters, but I'm happy to do it if we can't reach an agreement." (Doc. 426 at 254).

Counsel for Mr. Brice argued that "[a]ll the Government has to get in is he has a prior conviction for X. That's what's appropriate, not the details." (Doc. 426 at 256).

The court announced, "So we talked about it.  Talk about it.  If not, I'm prepared to make a ruling tomorrow in a way that will be very quick and easy to facilitate with the jury if you can't get something figured out.  Okay?  So that's my ruling on that."  (Doc. 426 at 257).

When the court was informed no stipulation had been reached, the court announced, "First page of everything."  (Doc. 426 at 274).  When counsel for Mr. Brice inquired, "Why can't we just combine into it a single page that says convicted on this date – " and the court interrupted, "You didn't like it when the cop made up there.  When that girl cut and pasted, you said that was bad; right?  This is the way it's done.  It's very innocuous.  All right."  (Doc. 426 at 274).

Accordingly, Government's exhibits A-D, Mr. Brice's prior convictions, were admitted.  (Doc. 427 at 39).  The Government addressed them during rebuttal.  (Doc. 428 at 101).

## STANDARDS OF REVIEW

This court reviews review a claim under the Speedy Trial Act *de novo* and reviews the district court's factual determinations on excludable time for clear error.  *United States v. Williams*, 314 F.3d 552, 556 (11th Cir. 2002).

This court reviews a district court's admission of prior-conviction evidence under Rule 609 for an abuse of discretion.  *United States v. Bailey*,

762 Fed. Appx. 698, 699 (11th Cir. 2019). However, "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *United States v. Toll*, 804 F.3d 1344, 1353 (11th Cir. 2015).

## SUMMARY OF THE ARGUMENT

From October 21, 2021, when Mr. Brice stopped introducing delay pursuant to 18 U.S. Code § 3161(h) that would constitute excludable time, through February 9, 2022, when the court first gave reasons why the ends of justice outweighed the best interest of the public and the defendant in a speedy trial, 111 non-excludable days passed, and the 70 day window in which to have permissibly tried Mr. Brice pursuant to the Speedy Trial Act expired.

Prior to February 9, 2022, the court failed to make the necessary findings, with reasons in support thereof, for the continuances, and where, as here, the district court fails to comply with the requirements imposed by 18 U.S. Code § 3161, the resulting delay does not constitute excludable time from the 70-day calculation. *United States v. Ammar*, 842 F.3d 1203, 1210 (11th Cir. 2016). At the point the court began complying with 18 U.S. Code § 3161(h)(7)(A), on February 9, 2022, the 70 days had already expired.

Accordingly, because Mr. Brice was not tried within 70 days of the filing of the indictment, Mr. Brice's rights under the Speedy Trial Act were violated, and his conviction must be vacated.

Further, the trial court abused its discretion by failing to weigh on the record whether Mr. Brice's prior convictions were more probative than prejudicial, as required under Federal Rule of Evidence 609(a)(1)(b) prior to their admission. *United States v. Bailey*, 762 Fed. Appx. 698, 700 (11th Cir. 2019), citing *United States v. Preston*, 608 F.2d 626, 639 (5th Cir. 1979).

Here, despite discussing the balancing test required, the court skipped that step entirely by simply looking at the documents and announcing, "I'm prepared to make a ruling tomorrow in a way that will be very quick and easy to facilitate with the jury if you can't get something figured out. Okay? So that's my ruling on that," followed thereafter by the ruling, "First page of everything." (Doc. 426 at 274). (Doc. 426 at 257).

## ARGUMENT

### I. Mr. Brice's July 2022 trial occurred beyond the 70 days mandated by 18 U.S. Code § 3161.

This court reviews review a claim under the Speedy Trial Act *de novo* and reviews the district court's factual determinations on excludable time for clear error. *United States v. Williams*, 314 F.3d at 556.

Prior to October 21, 2021, Mr. Brice through counsel engaged in conduct that constituted excludable time in computing when the trial must commence.

Illustrative (though not exhaustive) examples include the motions directed toward his competency, which were excludable pursuant to 18 U.S. Code § 3161(h)(1)(A), and motions for continuances that were excludable pursuant to 18 U.S. Code § 3161(h)(7)(A).

Mr. Brice's final request for a continuance was on May 14, 2021. (Doc. 212).

As of October, 2021, the trial was set for the end of November, 2021. (Doc. 413 at 4).

The Government filed a second superseding indictment on October 20, 2021, 1,009 days after the initial indictment, to add two defendants, Johan Holder and Kaleb James. (Doc. 232). The second superseding indictment did not change any of the allegations against Mr. Brice. (Doc. 232). (Doc. 414 at 4). As to Mr. Brice, it was the same indictment.

The following day, at the October 21, 2021 status conference, counsel for Mr. Brice first brought the Speedy Trial Act to the court's attention by demanding that Mr. Brice "be tried now," and was directed by the court to file something in writing. (Doc. 413 at 7, 8). The court brought up severance.

"My position on behalf of Mr. Brice is that we're going to demand trial now." (Doc. 413 at 7). The court responded, "I guess we could. I guess we could do a one-person trial at the end of November. We could." (Doc. 413 at 7). Counsel for Mr. Brice replied, "That's fine with me." (Doc. 413 at 8).

Counsel for the United State noted, "To the extent this is a motion to sever, Your Honor, I think that it should be denied." (Doc. 413 at 8). Counsel for Mr. Brice responded, "It is not a motion to sever, it's a demand for trial, under the statute."

| | |
|---|---|
| Government: | I haven't seen a demand for trial. I'm not sure what she's referring to. |
| Court: | Let's do it this way. It's federal court, so we've got to have everything in writing. So file whatever it is you think you want to do, file it in writing, and the prosecution will do a written response, and I'll take a look at it, I'll see where we are, and in the meantime we'll do a status …" |

(Doc. 413 at 8).

What was procedurally significant about this exchange was not the legally ineffective demand for trial, but counsel's notification to the court that no more excludable time attributable to Mr. Brice would be forthcoming, and the court would have to either sever Mr. Brice (the court's suggestion, and

within the court's power pursuant to Rule 14, which counsel affirmatively indicated was acceptable to Mr. Brice) or the court would have to comply with 18 U.S. Code § 3161(h)(7)(A) if additional delays were to constitute excludable time.

The court stated on the record, "In the meantime, for the reasons we've talked about in this hearing, I would make the ends of justice finding that the continuance outweighs the best interests of the public and the defendant in a speedy trial, at least from what I've heard so far. And then I'll look at whatever you have to file [counsel for Mr. Brice]. Okay?" (Doc. 413 at 9-10).

Mr. Brice did not have to file anything in writing, as the court here required, and the court's cursory oral finding, "the ends of justice finding that the continuance outweighs the best interests of the public and the defendant in a speedy trial" provided none of the 18 U.S. Code § 3161(h)(7)(A) reasons required.

18 U.S. Code § 3161(h)(7)(A) requires more than the mere words "ends of justice," by expressly providing that "No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its **reasons** for finding that the

ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial," *emphasis added*.

In *United States v. Ammar*, 842 F.3d 1203 (11th Cir. 2016), this Court addressed a situation where the trial court extensively and repeatedly gave its reasons for a continuance without using the "ends of justice" words. This Court noted the problem was not the use of the magic words (or lack thereof), but rather the court's refusal to do so, "Again, when confronted with the request to make the findings, the court expressly declined to do so, stating that the continuance was based solely on the parties' agreement." *United States v. Ammar*, 842 F.3d at 1211-12. "In sum, our review of the record leads us to conclude that the district court did not make the proper ends-of-justice findings to permit tolling of the 70-day time period in which Ammar should have gone to trial." *Id*.

Here, the inverse is true: the court used the words but did not provide the reasons for the ruling that § 3161(h)(7)(A) requires.

The court here did not provide the reasons for its finding orally or in writing.

By docket entry dated November 19, 2021, the court ruled

**ENDORSED ORDER: The Court has reviewed Defendant Sylvanis Brice's memorandum regarding his demand for speedy trial (Doc. 261)**

31

and the Government's response (Doc. 263).  Although a November trial

date was discussed at one time, this case is currently and remains set for

the January 2022 trial term.  The Court has previously held that the time

until the end of the January 2022 trial term is "excludable time" pursuant

to 18 U.S.C. § 3161(h).  (Doc. 241).  The status conference set for

December 16, 2021, will remain as scheduled, and potential trial dates

may be discussed at the status conference.  Signed by Judge Thomas P.

Barber on 11/19/2021.  (ANL) (Entered: 11/19/2021)

(Doc. 268).

Similarly, the docket entry referred to by the court as holding "the time

until the end of the January 2022 trial term is 'excludable time' pursuant to

U.S.C. § 3161(h)" is the court's October 21, 2021 oral ruling at the status

conference of that date:

ORAL ORDER as to Uriah Waggerby and Sylvanis Brice.  The Court

finds that the ends of justice served by granting such a continuance

outweigh the best interest of the public and the defendant in a speedy

trial.  The Court, therefore, determines that the time from today until the

end of the January 2022 trial term shall be "excludable time" pursuant

to 18 U.S.C. § 3161(h).  Jury Trial is set for the trial term commencing

January 3, 2022.  A Status Conference is scheduled for December 16, 2021

**at 10:30 am and will be conducted via Zoom video conference. A separate**

**Zoom invitation will be emailed to the parties closer to the hearing date.**

**Signed by Judge Thomas P. Barber on 10/21/2021. (JGG)** (Entered:

10/21/2021)

(Doc. 241.) (Doc. 413 at 9-10).

Neither of these constitute legally sufficient reasons pursuant to §

3161(h)(7)(A) and *Ammar* for the delay to constitute excludable time. *United*

*States v. Ammar*, 842 F.3d at 1210. ("If the district court fails to comply with

these requirements, then the resulting delay will not constitute excludable time

from the 70-day calculation.")

As this Court explained in *Ammar*:

Relevant here, a district court may grant a continuance of the trial

date when the "ends of justice" support the continuance. *See id*. §

3161(h)(7)(A). To do so, the district court must consider certain

factors, such as whether the failure to grant the continuance would

"result in a miscarriage of justice," *id*. § 3161(h)(7)(B)(i); whether due

to the nature of the case (or other factors), the case is too complex to

reasonably expect adequate preparation within the Speedy Trial Act's

time limits, *id*. § 3161(h)(7)(B)(ii); or whether a refusal to continue the

case would deny the defendant "reasonable time to obtain counsel," or

would unreasonably deny either party time for "effective preparation," id. § 3161(h)(7)(B)(iv).

After considering these statutory factors, the district court is required to "set[ ] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of [a] continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id*. § 3161(h)(7)(A). Considering this provision, the Supreme Court found in *Zedner* that "the Act requires express findings," and "without on-the-record findings, there can be no exclusion" of time past the 70-day requirement because the Speedy Trial Act, with "procedural strictness," "demands on-the-record [ends-of-justice] findings." 547 U.S. at 506–07, 509, 126 S.Ct. at 1989, 1990.

*United States v. Ammar*, 842 F.3d at 1206.

The court here did not expressly set forth, either orally or in writing, its reasons for finding that the ends of justice served by the granting of continuance outweighed the best interests of the public and the defendant in a speedy trial, and instead merely stated its finding without explanation.

The Government later told the court, in contending the 70 days had never even begun that, "Speedy trial and everything else goes with the most recent defendant, of course." (Doc. 416 at 14).

Counsel for Mr. Brice responded, "… my 70 days is running.  So I'm still in a position where I am demanding."  (Doc. 416 at 14).

Appellate counsel can locate no authority that supports the Government's claim that Mr. Brice's right to trial within 70 days began again on the filing of the second superseding indictment.  In fact, that statement is contradicted by the plain language of § 3161(b) and *Ammar* ("In this case, the clock for the 70-day calculation began on September 1, 2011, when a federal grand jury returned an indictment against Ammar …" *United States v. Ammar*, 842 F.3d at 1207) notwithstanding the fact that superseding indictment was returned in that case, as here, over a year after the initial indictment.  *Id*.  (Here, the second superseding indictment was returned over two and a half years after the original indictment.)

Accordingly, Mr. Brice's 70 day calculation began January 15, 2019, when the grand jury returned his indictment, and continued to run until the first excludable time event occurred (conservatively*) February 12, 2019 by way of a motion and order for continuance.  (Doc. 3).  (Doc. 15).  At least 28 days of Mr. Brice's 70 ran back in 2019.  (*The argument could be made that the excludable time event did not occur until the court's order on February 15, 2019, resulting in 30 days of the 70 total having run.)

Therefore, notwithstanding the Government's repeated assertions below that the full 70 days remained, at least 27 days had already run back in 2019.

Regardless, it was during the 111 days from October 21, 2021 through February 9, 2022 (when the court, for the very first time, provided reasons why the ends of justice outweighed the best interest of the public and the defendant in a speedy trial) that all days then remaining of Mr. Brice's 70 required under 18 U.S. Code § 3161(b) expired.

At the December 16, 2021 status conference, the court set the trial for February 28, 2022, and – like the October 21, 2021 status conference – concluded with, "And, pursuant to 18 USC Section 3161(h)(7) I find the ends of justice are served by continuing this case for the reasons that we have been just discussing, and that outweighs the best interests of the public and the defendant in a speedy trial. And I say that time is excludable over [counsel for Mr. Brice's] position. All right? Thank you." (Doc. 415 at 7-8).

Again, as with the October 21, 2021 status conference, no written order was ever docketed, and no reasons were ever expressed by the court, either verbally or in writing, as to the court's basis for its finding.

At the January 25, 2022 status conference, counsel for Mr. Brice brought up severance, this time suggesting that co-defendant Waggerby be

severed due to his counsel's medical issues. (Doc. 416 at 4). The January 25, 2022 conference concluded with no findings or rulings regarding scheduling.

At the February 3, 2022 status conference, counsel for Mr. Brice argued prejudice that was resulting from the delays. "The problem with all the delays is the date this alleged robbery occurred was November 1st, 2016. Memories fade, witnesses disappear. I'm having a hard time keeping track of people. I'm having people move, people change their phone numbers, it's . . . . I mean, that's really a -- one of the biggest problems with the delay." (Doc. 417 at 9).

The court set the trial for the first two weeks in June, 2022. (Doc. 417 at 13).

It was not until after the February 3, 2022 status conference that the court subsequently entered a written order that contained the court's reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial. (Doc. 277). These are the reasons the court had not previously given in October or December of 2021.

On April 19. 2022, the court declared, "I have decided to move the case to the week of July the 11th, to start on Monday, July the 11th." (Doc. 419 at 5). Again, for only the second time throughout, the court rendered a written order on May 4, 2022 containing the court's legally sufficient reasons for

finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial. (Doc. 302).

But it was too late.

It was too late because from October 21, 2021, through February 8, 2022, the 70 day window in which to have tried Mr. Brice ran out without any oral or written orders from the court that provided the reasons for the delay required under § 3161(h)(7)(A). By merely stating the "ends of justice" language, without expressly giving the reasons upon which the finding was based, the district court did not make the proper ends-of-justice findings to permit tolling of the 70-day time period. *United States v. Ammar*, 842 F.3d at 1212.

Even assuming, *arguendo,* that the portion of Mr. Brice's 70 days remaining in 2021 did not recommence until trial was scheduled to have occurred the end of November, 2021, by the most conservative estimate possible, from December 1, 2021 to February 8, 2022, 69 non-excludable days passed, which, when added to the 28 days that ran at the commencement of the action, still violated the Speedy Trial Act.

"A criminal defendant's right to a speedy trial is one of the most basic rights preserved by our Constitution. Congress chose to safeguard this

important right through the rigid procedural requirements of the Speedy Trial Act. Those requirements were not met here. Therefore, we have no choice but to vacate Ammar's conviction." *United States v. Ammar*, 842 F.3d at 1212-13, *internal quotation and citation omitted*.

Here too the requirements were not met, and this Court must vacate Mr. Brice's conviction.

## II. The court abused its discretion by admitting Mr. Brice's prior convictions pursuant to Rule 609 where the court conducted no analysis as to whether the probative value outweighed the prejudicial effect and failed to explicitly identify the factors the court considered and weighed.

This court reviews a district court's admission of prior-conviction evidence under Rule 609 for an abuse of discretion. *United States v. Bailey*, 762 Fed. Appx. 698, 699 (11th Cir. 2019). However, "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *United States v. Toll*, 804 F.3d 1344, 1353 (11th Cir. 2015).

During Mr. Brice's cross examination of Detective Jarret Romanello, counsel asked questions regarding Mr. Brice's statements to the Detective, specifically that Mr. Brice had said he was with his girlfriend and children at the time of the incident at issue. (Doc. 424 at 196-197).

The Government noted that defense counsel had just " … elicited self-serving hearsay statements against Mr. Brice, and we intend to introduce evidence of his prior convictions as the declarant." (Doc. 424 at 198-199).

Discussions between counsel for Mr. Brice and the Government ensued regarding the possibility of a stipulation, and ultimately counsel elected not to participate to preserve the Rule 609 objection now raised on appeal. (Doc. 426 at 274).

| | |
|---|---|
| Court: | All right. We will-come to that now. So now we're doing the next step, where the Judge has to do the balancing under the rule. So now, because it is new information that was not previously covered, specifically going to an alibi, now we're under Rule 609, where have I to decide what I'm going to allow. |
| | So it's fair game under Rule 806. Now, what are we going to allow under Rule 609? |
| Counsel: | Just to make my record, Your Honor, I just want to make my 609 objection on the record. |
| Court: | Yeah. Go ahead. |
| Counsel: | There's a balancing test that you -- the Court has to determine an on-the-record finding that the value of |

admitting the evidence outweighs its prejudicial effect. So I'm saying that anything that the Court admits pertaining to any priors of my client, of course, it's going to be he did something bad before, he's a bad person, he should be found guilty.

Government:     Judge, that's not a balancing test. And Your Honor, I just want to make a point. I'm not even asking -- this is a subset of Mr. Brice's felony convictions. He has an extra conviction that is right on the border of the ten years that I didn't ask about.

(Doc. 426 at 252-53).

Accordingly, this exchage reflects that the court expressly found that under Rule 806, counsel for Mr. Brice had introduced the hearsay statements of Mr. Brice that entitled the Government to introduce evidence of his priors, and that what remained was the prejudicial versus probative analysis required under Rule 609.

The court recapped where in the process the parties were:

"So Romanello was questioned. He probably testified longer than any other witness in this case about a lot of stuff. I guess most of it had to do with his visits with Mr. Waggerby. But at some point, he had some information

that he was asked about on direct by the prosecutors about Mr. Brice. And then, on cross-examination, Mr. Brice's attorney elicited information specifically that, apparently, Mr. Brice had told the cops that he was at his auntie's house with his girlfriend, Gigi, in Clewiston on the date of the attempted robbery of Reuben Billie's house and that he had nothing to do with it. And that's from the transcript." (Doc. 426 at 253).

"And that's, basically, an alibi, which I think we're – that's what we're going to hear about tomorrow. I'm hearing that we are going to have a girlfriend or somebody that's gonna say that, look, 'Mr. Brice, wrong guy. He was with me in Clewiston on the day in question,' or what have you. And so Mr. Brice has been, essentially, allowed to testify to the jury in support of his own alibi through that cross-examination questioning." (Doc. 426 at 254).

"To me, this is classic -- now we're in classic Rule 806 territory, and so, pursuant to that rule, the prosecution at least has the opportunity to admit prior convictions, but they would have me testify. That's how that the rule works. And so now we're doing the 609 balancing act here – it's not an act. It's an exercise. But let me see what it is. What do you have in terms -- are these certified copies like we would do in state court?" (Doc. 426 at 254).

Here, the court said, "we're doing the 609 balancing" then asked to literally see the documents the Government wanted to admit as impeachment,

at which point the Government responded that while they were all certified convictions, some of the contents of those certified convictions were probably more prejudicial than probative:

"These are all certified convictions. And, again, if we can reach some sort of agreement, I don't need to move these in, in front of the jury, because they contain a lot of information that [counsel for Mr. Brice] probably doesn't want in there about sentences and other matters, but I'm happy to do it if we can't reach an agreement." (Doc. 426 at 254).

Counsel for Mr. Brice (correctly noted) that "[a]ll the Government has to get in is he has a prior conviction for X. That's what's appropriate, not the details." (Doc. 426 at 256).

Instead of balancing anything, much less evaluate prejudice to determine whether it exceeded the Government's right to impeach, the court instead summarily announced, "So we talked about it. Talk about it. If not, I'm prepared to make a ruling tomorrow in a way that will be very quick and easy to facilitate with the jury if you can't get something figured out. Okay? So that's my ruling on that." (Doc. 426 at 257).

Restated, the court informed counsel for Mr. Brice that absent a stipulation, the court was going to do whatever it wanted without providing any reasons.

Which is exactly what the court did. Once informed no stipulation had been reached, the court announced, "First page of everything." (Doc. 426 at 274). When counsel for Mr. Brice inquired, "Why can't we just combine into it a single page that says convicted on this date – " and the court interrupted, "You didn't like it when the cop made up there. When that girl cut and pasted, you said that was bad; right? This is the way it's done. It's very innocuous. All right." (Doc. 426 at 274). It is unclear how the court's argument might apply here, since the court had overruled counsel for Mr. Brice's objection as to the composite exhibit the court was referring to. (Doc 426 at 116).

Regardless, no balancing ever took place. At least not aloud.

In fact, the court made no ruling whatsoever that the probative value outweighed the prejudicial effect, unless "It's very innocuous" is read to mean the contents of Mr. Brice's prior convictions that contained "a lot of information that [counsel for Mr. Brice] probably doesn't want in there about sentences and other matters." (Doc. 426 at 254). In the context in which the statement was made ("When that girl cut and pasted, you said that was bad; right? This is the way it's done. It's very innocuous.") the statement "it's very innocuous" can logically only be read to mean the process and procedure, and not the substantive determination as to the court's application of the probative value vs. prejudicial effect finding required.

This was not the "small subset" of priors this Court addressed in *Bailey*, since the Government here noted there was only one conviction omitted. *United States v. Bailey*, 762 Fed. Appx. at 700. "He has an extra conviction that is right on the border of the ten years that I didn't ask about." (Doc. 426 at 253).

No, rather than a small subset, the Government introduced 80% of Mr. Brice's priors unredacted. Government's exhibits A-D, Mr. Brice's prior convictions, were admitted. (Doc. 427 at 39). The "extra" one was not admitted, meaning that 4 out of 5 total were admitted.

"When a defendant objects to evidence under Federal Rule of Evidence 609, the trial court is required to make an on-the-record finding under Rule 609(a)(1) that the probative value of admitting the evidence outweighs its prejudicial effect. *United States v. Bailey*, 762 Fed. Appx. 698, 700 (11th Cir. 2019), citing *United States v. Preston*, 608 F.2d 626, 639 (5th Cir. 1979).

In *Preston*, the Fifth Circuit held

[A] Trial Judge must make an on-the-record finding that the probative value of admitting a prior conviction outweighs its prejudicial effect before admitting a non-609(a)(2) prior conviction for impeachment purposes under Rule 609(a)(1). An on-the-record finding that probative value outweighs prejudicial effect is not merely an idle

gesture. Such a finding insures that the Judge has at least taken into account the relevant considerations. Of course, such a finding can still be challenged, but such challenge is analyzed under the abuse of discretion standard. See *United States v. Martinez*, 5 Cir., 1977, 555 F.2d 1273, 1276.

Although the Rule does not on its face mandate, we think it useful for Trial Judges to conduct a hearing on-the-record "at which the pertinent factors are explicitly identified and weighed." 3 J. Weinstein, Evidence P 609-79 (1975). As the Seventh Circuit observed, "when such a hearing on the record is held and such an explicit finding is made, the appellate court easily will be able to determine whether the Judge followed the strictures of Rule 609 in reaching his decision." *United States v. Mahone*, 7 Cir., 1976, 537 F.2d 922, 929. *See generally*, Note, Impeachment by Prior Conviction: Adjusting to Federal Rule of Evidence 609, 1979, 64 Cornell L.Rev. 416, 428-31.

*United States v. Preston*, 608 F.2d at 639.

Here, the court made no ruling of any kind that the probative value of Mr. Brice's four priors outweighed the prejudicial effect, much less the kind of helpful explicit finding contemplated by the Fifth Circuit in *Preston* and

applicable here via *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981).

The balancing required pursuant to Rule 609 was not an idle gesture, nothing in this record suggests the court here took into account any considerations and it is impossible to determine whether the Judge followed the strictures of Rule 609 in reaching his decision.

By failing to conduct the prejudicial vs. probative analysis Rule 609 requires, the court here abused its discretion in allowing the Government to introduce Mr. Brice's four prior felony convictions.

## CONCLUSION

Mr. Brice respectfully requests that this Court reverse and remand to the district court with instructions to dismiss the charges consistent with 18 U.S.C. § 3161 and *Ammar*.

Respectfully submitted,

S/ Keith W. Upson
Florida Bar No. 130079
The Upson Law Group, P.L.
2335 Stanford Court, Suite 503
Naples, Florida 34112
239-330-7551 Voice
239-330-7548 Facsimile
keith@upsonlawgroup.com
Counsel for Appellant Sylvanis Brice

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), per Fed. R. App. P. 32(a)(7)(A), because this brief contains only 10,732 words total in Times New Roman 14 point proportional font inclusive of the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

S/ Keith W. Upson, Esq.
Counsel for Appellant Sylvanis Brice

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the forgoing was served on Assistant United States Attorney Sean Siekkinen via this Court's Electronic Case File System on this 25th day of September, 2023

S/ Keith W. Upson
Florida Bar No. 130079
The Upson Law Group, P.L.
2335 Stanford Court, Suite 503
Naples, Florida 34112
239-330-7551 Voice
239-330-7548 Facsimile
keith@upsonlawgroup.com